IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JENNIFER TOMES,

                Plaintiff,

v.                                                Case No. 22-2421-JWB

LOANCARE, LLC,

                Defendant.[1]

## MEMORANDUM AND ORDER

This matter is before the court on Defendant's motion to dismiss. (Doc. 53.) The matter is fully briefed and ready for decision. (Docs. 54, 60, 62.) For the reasons stated herein, the motion is GRANTED.

**I.  Facts and Procedural History**

This case arises out of a mortgage Plaintiff had on a property in Richmond, Kansas. Defendant was the servicer on Plaintiff's mortgage, and it provided credit information about her mortgage to credit reporting agencies ("CRAs"). In March 2020, as the COVID-19 pandemic began impacting the United States, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"). The CARES Act provided, in part, a right to a forbearance for people whose mortgages were federally backed. (Doc. 51 at 2.)

In April 2020, Defendant reported that Plaintiff was 150 days past due on her mortgage. Plaintiff's mortgage was backed by the Federal Housing Administration ("FHA"), meaning that

---

[1] Plaintiff originally brought this case against Defendants LoanCare, LLC, Equifax Information Services LLC ("Equifax"), TransUnion LLC ("TransUnion"), and Experian Information Solutions, Inc. ("Experian"). (Doc. 1-1 at 3.) Equifax, TransUnion, and Experian have all been dismissed from the case. (Docs. 47, 48, 58.) Thus, only LoanCare, LLC remains as a defendant.

Plaintiff had a right to forbearance under the CARES Act. Plaintiff applied and was approved for a forbearance beginning April 23, 2020 and lasting until September 2021. (*Id.* at 2–4.)

Between August 2020 and January 2021, Plaintiff made several payments towards her mortgage totaling $11,347.00. With the payment in January 2021, Plaintiff paid the arrears incurred prior to the start of the forbearance in April 2020. In January 2022, Plaintiff accessed her credit reports from the three major CRAs, Equifax, Experian, and TransUnion. Her Equifax report showed that she was 150 days past due on the mortgage from January 2021 to October 2021, and 180 days past due in December 2021. Her Experian report showed that she was 150 days past due on the mortgage from January 2021 to October 2021, and 180 days past due in December 2021 and January 2022. Her TransUnion report was slightly different, showing that she was 120 days past due on the mortgage from January 2021 to October 2021 and 120 days past due in December 2021 and January 2022. (*Id.* at 4–5.)

Plaintiff disputed the reporting of her mortgage, submitting letters by certified mail to Equifax, Experian, and TransUnion on February 8, 2022. Plaintiff never received any investigation results from this first dispute. Plaintiff accessed her Experian and Equifax reports on March 24, 2022, and the reports continued to report Plaintiff as late as they had before. Plaintiff was unable to access her TransUnion report on that date because an open dispute was still in process. Plaintiff submitted a second dispute letter to Equifax and Experian on April 13, 2022. Plaintiff never received any investigation results from this second dispute. Plaintiff again accessed her credit reports on May 17, 2022, and all three still reported Plaintiff as late as they had before. (*Id.* at 5–7.)

Plaintiff attempted to refinance her car loan but was unable to do so because of her credit report. Several creditors or potential creditors have accessed Plaintiff's credit reports while

Defendant has reported Plaintiff late on her mortgage. Plaintiff sold the property in Richmond, Kansas which was subject to the mortgage in December 2021. (*Id.* at 4, 7.)

Plaintiff initially brought her case in Wyandotte County state court in September 2022 alleging violations of the Fair Credit Reporting Act ("FCRA"). (Doc. 1-1 at 3, 9–17.) Defendant (along with the other defendants who have been dismissed from the case) removed the case to this court on October 17, 2022. (Doc. 1.) Plaintiff filed an amended complaint bringing a claim for violation of the FCRA under 15 U.S.C. §§ 1681e(b) and 1681(i); a claim for violation of the FCRA under 15 U.S.C. § 1681s-2(b); and a claim for violation of the Kansas Consumer Protection Act ("KCPA") under K.S.A. 50-601 *et seq.* (Doc. 51 at 7–13.) Because the other defendants have been dismissed, only the claims under 15 U.S.C. § 1681s-2(b) and the KCPA remain.

**II.    Standard**

To withstand a motion to dismiss for failure to state a claim, a complaint must contain enough allegations of fact to state a claim for relief that is plausible on its face. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to Plaintiff. *Id.* Conclusory allegations, however, have no bearing upon the court's consideration. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007).

On a Rule 12(b)(6) motion, the court generally should not look to matters outside the pleadings. *Promotional Headwear Int'l. v. Cincinnati Ins. Co.*, 504 F. Supp. 3d 1191, 1196 (D. Kan. 2020). "However, the Court may consider documents that are referred to in the complaint if they are central to the plaintiff's claim and the parties do not dispute their authenticity." *Id.* (considering insurance policy attached to complaint).

**III.   Analysis**

3

Defendant attaches five forbearance approval letters and its declaration that these documents are authentic to its memorandum in support of its motion to dismiss. (*See* Docs. 54-1, 54-2, 54-3, 54-4, 54-5, 54-6.) Defendant argues that these documents are appropriate for the court's consideration because Plaintiff's complaint refers to the forbearance and the letters are central to her claim and authentic. (Doc. 54 at 3 n.1.) Plaintiff's response to the motion to dismiss does not address these documents. The court agrees with Defendant that these documents are central to Plaintiff's claim, referred to in the complaint, and authentic, and thus finds that these documents are appropriate for the court's review. *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

### A. FCRA Claim under 15 U.S.C. § 1681s-2(b)

Defendant argues that Plaintiff has not sufficiently alleged a claim under the FCRA because Defendant reported accurate information about Plaintiff's mortgage. (Doc. 54 at 8–13.) Defendant also argues that its reporting would not have changed even if it had conducted a reasonable investigation and that the FCRA and the CARES Act permit delinquent reporting if the individual is delinquent at the start of the forbearance. (*Id.*) Plaintiff responds that even if Defendant's reporting was technically accurate, it was materially misleading and still a violation of the FCRA. (Doc. 60 at 4–9.) Plaintiff also argues that because the FHA guidance states that lump sum repayment is not required at the end of a forbearance, it was improper for Defendant to report her as delinquent after the forbearance was over. (*Id.*) Further, Plaintiff argues that her pleading is sufficient to survive the motion to dismiss and that she is not required to plead facts to overcome a defense of accuracy. (*Id.* at 9.)

Furnishers of credit information are obligated to investigate disputed information once they receive a report from a CRA and to take other necessary steps to resolve any inaccuracy. *Adkins*

4

*v. SLM Corp.*, Case No. 22-2082-SAC-TJJ, 2022 WL 1302805, at *2–3 (D. Kan. May 2, 2022) (citing *Sander v. Mt. Am. Fed. Credit Union*, 689 F.3d 1138, 1147 (10th Cir. 2012); *Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1178–79 (10th Cir. 2013)).  To state a claim under 15 U.S.C. § 1681s-2(b), the plaintiff "must allege sufficient factual matter, accepted as true, as to make the plausible showing that the furnisher provided information, which was inaccurate, false, or materially misleading."  *Id.* at *3.  Under the FCRA and the CARES Act, furnishers were permitted to report that people who were in a forbearance were delinquent on their mortgages if those individuals were delinquent before the forbearance began.  15 U.S.C. § 1681s-2(a)(1)(F)(ii)(II).  However, if the individual paid on the mortgage and became current on payments during the forbearance, the furnisher was required to report the individual as current.  *Id.*

Plaintiff was 150 days delinquent on her mortgage before she entered the forbearance in April 2020.  By January 2021, Plaintiff was able to make sufficient payments of approximately $11,000 to satisfy the arrears incurred before she entered the forbearance.  But it is undisputed that Plaintiff did not make further mortgage payments which were accruing during the term of the forbearance.  Defendant reported Plaintiff as 150 days delinquent between January 2021 and October 2021, which Plaintiff contends was not technically inaccurate but was misleading.

According to the terms of the forbearance, Plaintiff's mortgage payments continued accruing while she was in the forbearance, although she was not required to make the payments at the time and did not suffer any late fees or other similar negative consequences for not making the payments at the time.  (Doc. 54-1 at 3–4.)  Defendant made clear to Plaintiff that her mortgage payments were suspended, but that "[a]s a result of not making any payments during the term of the Forbearance Plan, [she would] become delinquent on [her] mortgage and [her] credit score may be impacted."  (*Id.* at 3.)  In other words, Plaintiff knew that while she was not required to

5

make payments on her mortgage during the forbearance, the payments would still accrue, and she would not be considered current on her mortgage. Despite the fact that Plaintiff paid enough payments to cover the arrears incurred prior to the forbearance, she did not become current on her mortgage and thus, it was accurate for Defendant to report her as delinquent for the duration of the forbearance.

Because the report was accurate (which Plaintiff concedes), the question is whether the reporting was misleading. Furnishers of credit information not only must correct inaccurate information, but also information "provided 'in such a manner as to create a materially misleading impression.'" *Llewellyn*, 711 F.3d at 1186 (quoting *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 617 (6th Cir. 2012)). "An accurate statement may be misleading if it can reasonably be interpreted in an inaccurate, adverse manner." *Fishback v. HSBC Retail Servs. Inc.*, 944 F. Supp. 2d 1098, 1110 (D.N.M. 2013). "The burden rests with the plaintiff to show the defendant furnisher provided information that was inaccurate or false or that was materially misleading." *Adkins*, 2022 WL 1302805, at *3 (citing *Schueller v. Wells Fargo & Co.*, 559 F. App'x 733, 737 (10th Cir. 2014), *cert. denied*, 574 U.S. 908 (2014)). Plaintiff contends it was misleading for Defendant to continue to report her as delinquent while she was in a forbearance, particularly because she made some mortgage payments during that time (sufficient to pay off the 150-day arrears incurred prior to the forbearance). The court disagrees.

Defendant complied with the CARES Act, which required it to report Plaintiff as delinquent because she was delinquent before the forbearance began. And the CARES Act would have also required Defendant to report Plaintiff as current had she become current on her mortgage payments during the forbearance. But because Plaintiff never became current, Defendant was not obligated to report her as current. And it was not misleading for Defendant to accurately report

that Plaintiff was not current on her mortgage. Defendant maintained the length of the delinquency (150 days) throughout the forbearance. This was not materially misleading because it could not have been interpreted in an inaccurate, adverse manner. To the contrary, Defendant's reporting actually could have been interpreted in a more positive way, suggesting that while Plaintiff was delinquent on her mortgage, she was continuing to pay monthly so that the amount of delinquency did not increase.

Plaintiff also takes issue with the reporting by Defendant that Plaintiff was 180 days delinquent in December 2021. Plaintiff argues that Defendant's reporting suggests that Defendant was requiring a lump sum payment at the end of the forbearance. (Doc. 60 at 8.) But Plaintiff alleges in her complaint that her forbearance ended September 2021. (Doc. 51 at 4–5.) Thus, by waiting to report that Plaintiff was 180 days delinquent until December 2021, Defendant provided Plaintiff with three extra months after the forbearance to begin making payments. Further, accepting Plaintiff's allegations as true, Plaintiff made several payments on her mortgage during the forbearance, totaling approximately $11,000. Those payments were sufficient to cover the arrears incurred before the forbearance began in April 2020. If Defendant expected Plaintiff to make a lump sum payment at the end her forbearance, Defendant would have reported Plaintiff as at least 17 months delinquent in December 2021 (for the period from April 2020 to September 2021). But Defendant only reported Plaintiff as 180 days (or approximately six months) delinquent. Accordingly, the December 2021 report was not inaccurate or materially misleading.

Plaintiff is perhaps correct that she is not required to "allege facts to overcome an asserted defense of accuracy." (Doc. 60 at 9, quoting *Adkins*, 2022 WL 1302805, at *3). But here, Plaintiff has not even alleged facts sufficient to show a plausible claim for relief. Defendant's motion to dismiss Count II of Plaintiff's amended complaint is granted.

## B. KCPA Claim under K.S.A. 50-601 *et seq.*

Plaintiff brings a claim under the KCPA for unconscionable conduct. (Doc. 51 at 13–16.) Defendant contends that Plaintiff has not pled all the elements of a KCPA claim at the heightened pleading level required. (Doc. 54 at 13–14.) Defendant also argues that it did not engage in unconscionable conduct, that there was not unequal bargaining power between the parties, and that Plaintiff was not aggrieved. (*Id.* at 14–18.) Plaintiff disagrees. (Doc. 60 at 9–14.)

The KCPA protects consumers from unconscionable acts by suppliers. K.S.A. 50-627. To state a prima facie case for an unconscionable act under the KCPA, Plaintiff must show: (1) that she is a consumer; (2) that Defendant is a supplier; (3) that Defendant committed an unconscionable act or practice; and (4) Plaintiff was aggrieved. *In re Motor Fuel Temperature Sales Practices Litig.*, 867 F. Supp. 2d 1124, 1141 (D. Kan. 2012). The first two elements are not at issue.

Defendant contends that Plaintiff has not pled the third and fourth elements with the requisite particularity. There is a dispute amongst members of this court as to whether KCPA claims are subject to a heightened pleading standard. *Compare Tomlinson v. Ocwen Loan Servicing, LLC*, Case No. 15-1105-EFM-KGG, 2015 WL 7853957, at *2 (D. Kan. Dec. 3, 2015) ("KCPA claims need not be pleaded with particularity.") *with Pinkney v. TBC Corp.*, Case No. 2:19-cv-02680-HLT, 2020 WL 1528544, at *6 (D. Kan. Mar. 31, 2020) ("After a careful review, the Court concludes that Plaintiff's allegations under the KCPA sound in fraud and, thus, are subject to Rule 9(b)'s heightened pleading standard and must be pleaded with particularity."). The court need not decide this issue, though, because it concludes that under any pleading standard, Plaintiff has failed to show unconscionable conduct.

To show unconscionable conduct, there must be both deceptive behavior and unequal bargaining power between the parties. *Tomlinson*, 2015 WL 7853957, at *2. The court begins by examining whether Defendant exhibited deceptive behavior related to Plaintiff's forbearance and its reporting to CRAs regarding Plaintiff's mortgage. Defendant set out the terms for the forbearance and its credit reporting in the letters it sent to Plaintiff when it approved the forbearance and each extension of the forbearance. (*See* Docs. 54-1, 54-2, 54-3, 54-4.) For example, Defendant notified Plaintiff that she did "not need to make any mortgage payments" during the forbearance but that her "loan [would] not be current at the end of the Forbearance Plan" which could have an impact on her credit score. (Doc. 54-1 at 3.) Defendant also notified Plaintiff that her mortgage payments had only been suspended or reduced, not forgiven. (*Id.*) She was further notified that because she entered the forbearance, Defendant would not refer her loan to foreclosure or proceed to a foreclosure. (*Id.* at 4.) And importantly, Plaintiff was notified that if her loan was delinquent when she entered the forbearance, Defendant would report her as delinquent for the duration of the forbearance unless she was able to become current on the loan. (*Id.* at 5.)

In sum, Defendant notified Plaintiff exactly what would happen during her forbearance and then followed through with that exact plan. Defendant did not lie to Plaintiff or mislead her in anyway; to the contrary, Defendant notified her that her payments were continuing to accrue although she was not required to pay them, that her credit scores may be impacted, and that it would report her as delinquent if she was delinquent at the start of the forbearance. As this court has already explained, Plaintiff made payments during the forbearance, but they were not sufficient to bring her current on the loan. Thus, Defendant did not engage in any deceptive conduct even accepting Plaintiff's allegations as true. Plaintiff received a benefit by entering the forbearance –

9

her loan was not sent into foreclosure proceedings, and she was not required to make payments for nearly a year and a half.  There were downsides to this approach – her credit score was impacted which meant that she was later unable to refinance her car.  But Plaintiff was clearly notified about the benefits and consequences of choosing a forbearance, and she cannot now complain that Defendant was deceptive.  *See Tomlinson*, 2015 WL 7853957, at *5 ("Tomlinson does not allege that Ocwen misrepresented or concealed any facts, willfully or otherwise.  Nor does she allege that she was misled by Ocwen. . . . This is not deceptive behavior, and under the KCPA, it is not unconscionable." (footnotes omitted)).

As to Plaintiff's concerns that Defendant required a lump sum payment, the court finds no merit because no factual allegations suggest that Defendant required a lump sum payment at the end of the forbearance.  Quite the opposite, Plaintiff alleges that in December 2021, three months after Plaintiff's nearly 18-month long forbearance ended, Defendant reported that Plaintiff was only 180 days delinquent on her mortgage.  Accepting this factual allegation as true, Defendant reported that Plaintiff was only six months delinquent on her payments when it seemingly would have reported her as much more delinquent had it required a lump sum payment.  Thus, any argument that Defendant engaged in deceptive conduct by requiring a lump sum payment is cancelled out by Plaintiff's own factual allegations.

Because the court finds that Plaintiff has not alleged that Defendant engaged in any deceptive behavior, the court concludes that Plaintiff has not stated a prima facie case for unconscionable conduct in violation of the KCPA.  Plaintiff's KCPA claim is accordingly dismissed.

**IV.    Conclusion**

For the reasons stated, Defendant's motion to dismiss (Doc. 53) is GRANTED.

IT IS SO ORDERED this 14th day of June, 2023.

                                                  _____s/ John W. Broomes_____
                                                  JOHN W. BROOMES
                                                  UNITED STATES DISTRICT JUDGE